## THE HARLEM.[1]

### MURRAY v. THE HARLEM.

*(District Court, S. D. New York.   April 1, 1885.)*

CARRIERS — CARRIER OF PASSENGERS — OVERLOADING STEAMERS — PENALTY — EXCURSION PERMIT — EVIDENCE.

While the penalties imposed by law for overcrowding steam-boats must be adjudged without hesitation where the provisions designed for the security of life are violated, the court ought to be satisfied that the violation is clearly made out before finding the defendants liable.   On the evidence in this case, showing but a single count, made at dusk, amid a rush of the passengers, unverified by any other evidence, and other circumstances making the excess improbable, *held,* that the libelant had not satisfactorily proved that the Harlem had more passengers than were allowed under her excursion permit, and the libel should therefore be dismissed.   *Held, also,* that an excursion permit, given by the proper inspectors, for an additional number of passengers, for a period of 20 days, was not so clearly void on its face as to exclude the additional number from the lawful count.

In Admiralty.

*Henry G. Atwater,* for libelant.

*Scudder & Carter,* (*Geo. A. Black,*) for respondents.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

Brown, J. 1. The excursion permit is a sufficient protection to the steamer against liability up to the number allowed by the special permit. It was not void upon its face; it was not fraudulently obtained; it has never been set aside; and its validity is not one of the issues. I think it was intended by the inspectors, as well as by the owners, to cover just such trips as the Harlem was making. I am not prepared to hold it such an excess of authority in the inspectors, under the law, as to make it void upon its face. This serves as a protection, therefore, for the trip from Newark to Bay Ridge, as the number of passengers on that trip did not exceed that allowed by the special permit.

2. Whether, upon the return trip, the number allowed, 850, was exceeded, is a question very sharply litigated. I am entirely satisfied of the general integrity and competency of Mr. Kelly, who was employed by the libelant to count the passengers. The libelant's case rests entirely on the correctness of his count of the passengers, as they were coming off the boat at Newark, on the nineteenth of July, between 8 and 8.30 o'clock P. M. According to the almanac, the sun set at 7.37, so that the count was made about three-quarters of an hour after sunset, in the twilight. The evidence is that the passengers went off with a rush, as they would naturally do at such a time. Their tickets had been surrendered on coming aboard, and there was nothing to check the hurry and confusion usual on a late exit. The difficulty of counting with any accuracy under such circumstances is manifest; and it was practically conceded by Mr. Kelly himself in stating that he could not count the passengers accurately, even as they went on the boat at Bay Ridge, and he consequently gave it up there.

On the other hand, there is considerable force in the respondents' evidence that the legal limit was not exceeded. It is the best evidence that the respondents could possibly give in the absence of a perfectly exact count. The three boats present at Bay Ridge seem to have had sufficient capacity for all that could have been there within a half hour of the Harlem's leaving. They had perfect arrangements for shutting off passengers when the boats were properly loaded, and the practice was to give that order when the limit was reached within 50. As there were plainly present full boat accommodations for all the passengers to be carried, there was no temptation, and no reason, for putting more than the number allowed on any one boat. The superintendent was in the habit of counting those who came aboard; and he testifies that in this case he did count them, and shut them off, as usual, when within 50 of the number allowed, leaving behind some 25 or 30 in the inclosure on the pier.

While the penalties imposed by law must be adjudged without hesitation where the provisions designed for the security of life are violated, the court ought to be satisfied that the violation is clearly made

out before finding the defendants liable. Under the circumstances of this case, I do not feel sufficiently satisfied on this point to decree judgment for these heavy penalties. The difficulty of counting accurately in the twilight, on the final rush from the boat; the absence of any verification of Mr. Kelly's count by other persons who might have been procured to count the passengers, either when they came off or when they went on; the testimony of the defendants; and the circumstances of the various boats at Bay Ridge about the time of the Harlem's return voyage,—seem to me to cast so much doubt on the accuracy of Mr. Kelly's single, unverified count that I feel constrained to withhold judgment for the libelant; and therefore direct the libel to be dismissed.